UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS


UNITED STATES OF AMERICA,

                                    Docket No. 14-20027

            Plaintiff,

    vs.                             Urbana, Illinois
                                    April 17, 2015
                                    2:30 p.m.
DAVID E. AUTEBERRY,

            Defendant.


                    SENTENCING HEARING

        BEFORE THE HONORABLE COLIN STIRLING BRUCE
            UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S :

For the Plaintiff:      ELLY M. PEIRSON, ESQUIRE
                        Assistant United States Attorney
                        201 South Vine Street
                        Urbana, Illinois 61802
                        217-373-5875


 For the Defendant:     ELISABETH R. POLLOCK, ESQUIRE
                        Assistant Federal Defender
                        300 West Main Street
                        Urbana, Illinois 61801
                        217-373-0666


Court Reporter:         LISA KNIGHT COSIMINI, RMR-CRR
                        U.S. District Court
                        201 South Vine, Suite 344
                        Urbana, Illinois 61802


Proceedings recorded by mechanical stenography; transcript
produced by computer.

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

```
 1                    (In open court, 2:31 p.m.)
 2             DEPUTY CLERK:  This is Case Number 14-20027,
 3   United States of America versus David E. Auteberry.
 4             THE COURT:  Elly Peirson appearing on behalf of
 5   the United States; Elisabeth Pollock appearing on behalf
 6   of the defendant, Mr. Auteberry, who's also personally
 7   present.
 8             Probation officer Kara Appenzeller is also
 9   present in the courtroom.  She's the author of the
10   presentence report in this case.
11             Ms. Peirson, have you received and reviewed a
12   copy of the revised presentence report?
13             MS. PEIRSON:  I have, Your Honor.
14             THE COURT:  And I will acknowledge that I have
15   read the sentencing commentary you filed on April 16th --
16   or yesterday.  Yesterday.  I have already had a chance to
17   review that and read it in its entirety.
18             All right.  Ms. Pollock, have you received and
19   reviewed a copy of the presentence report?
20             MS. POLLOCK:  Yes, Your Honor.
21             THE COURT:  Did you go over it with your
22   client?
23             MS. POLLOCK:  Yes.
24             THE COURT:  And as far as objections go, now,
25   my understanding from speaking to Ms. Appenzeller, we
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   have corrected all of the conditions of supervised

2   release consistent with Thompson, U.S. v. Thompson and

3   U.S. v. Kappes, K-a-p-p-e-s.  And with those corrections,

4   my understanding is that there are no more objections

5   from Defendant; is that correct?

6           MS. POLLOCK:  That's correct, Your Honor,

7   although I believe I technically have to withdraw my

8   objection to the paragraph regarding the probation

9   officer's right to search the defendant's residence.  The

10  time restriction was 6:00 a.m. to 11:00 p.m.  I objected

11  to that on the basis that it was violating the Fourth

12  Amendment.  Kappes rejected that notion, so I am

13  withdrawing that one objection.  Everything else has been

14  resolved.

15          THE COURT:  Okay.  So the record will show that

16  objection is withdrawn; and with that then -- well, then,

17  we have no objections left, correct?

18          MS. POLLOCK:  That's correct.

19          THE COURT:  Okay.  Do you have any evidence to

20  present in mitigation?

21          MS. POLLOCK:  No, Your Honor.

22          THE COURT:  I didn't think so.

23          All right.  Mr. Auteberry, have you had a

24  chance to review the presentence report with your

25  attorney?

1          DEFENDANT AUTEBERRY:  Yes.

2          THE COURT:  Okay.  And I see you have two

3    family members here in the courtroom; is that correct?

4          DEFENDANT AUTEBERRY:  Yes.

5          THE COURT:  All right.  So with that being

6    said, at this time, then, the Court will adopt the

7    revised presentence report and all of its findings

8    contained therein, including all of the revised

9    supervised release conditions, specifically all the

10   conditions -- supervised release conditions 1 through 16

11   that were revised and agreed to in the wake of U.S. v.

12   Kappes.

13          So as a result of that, the applicable adjusted

14   offense level is 37.  The criminal history category is I.

15   The applicable sentencing guideline imprisonment range

16   then for each of the four counts -- the cumulative is 210

17   to 262 months for Counts 1 through 4, 210 to 262 months'

18   imprisonment; five years of supervised release on each

19   count.  The defendant is not eligible for probation; a

20   $20,000 to $200,000 fine; no restitution; and a $100

21   special assessment on each count.

22          Have I correctly stated the applicable

23   sentencing guideline advisory range, Mrs. Pollock?

24          MS. POLLOCK:  Yes, Your Honor.

25          THE COURT:  Mrs. Peirson?

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

```
1              MS. PEIRSON:  Yes, Your Honor.
2              THE COURT:  All right.  The statutory range
3   would be 15 -- mandatory minimum 15 to 30 years on each
4   count.  So, theoretically, if they all run consecutively,
5   it could be 60 years to 120 years' imprisonment; five
6   years to life on each count of supervised release; no
7   probation; up to a $250,000 fine on each count, so a
8   total up to a million dollars possible; no restitution;
9   and the same $100 special assessment for each count, for
10  a total of $400.
11             Have I correctly stated the applicable
12  statutory range, Mrs. Peirson?
13             MS. PEIRSON:  Yes, Your Honor.
14             THE COURT:  Mrs. Pollock?
15             MS. POLLOCK:  Yes, Your Honor.
16             THE COURT:  There was -- I thought I saw --
17  is -- there's cooperation language in the plea agreement.
18  Is there going to be a motion for a downward departure?
19             MS. PEIRSON:  No, Your Honor.
20             THE COURT:  All right.  At this time, then, I
21  will take the recommendation from the government, please.
22             MS. PEIRSON:  Your Honor, I think that I've
23  adequately, or I have stated my position in my
24  commentary.  I'm recommending a low end of the guideline
25  sentence of 210 months.
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

6

1        Unless the Court has any specific questions for

2    me, I know the Court indicated it had reviewed that.

3        And I also note that the victims, two of the

4    victims -- two of the four -- tendered victim impact

5    statements in this case, and they're summarized in the

6    PSR.  And I just would highlight that for the Court.

7        The only other clarifying thing I would make

8    for the record is that the revised conditions, the 16

9    paragraphs that the Court noted, was actually a separate

10   document, not part of the revised filed PSR.  So I don't

11   know if at some point it will be.  I did receive them

12   timely.  They actually came, were revised based on the

13   language that Ms. Pollock and I agreed to and that I

14   incorporated in my sentencing commentary.

15       But I just kind of wanted to make that clear.

16   I don't know if we're going to file it as a separate

17   document or not.

18       THE COURT:  Thank you.  Thank you for letting

19   me know that.

20       Ms. Pollock, you've received this -- okay.  So

21   now if I understand, it's not -- it was not part of the

22   revised PSR; it was just an addendum that you and

23   Mrs. Peirson agreed to?

24       MS. POLLOCK:  That's correct.

25       THE COURT:  And you worked with

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1    Mrs. Appenzeller to create that, correct?

2              MS. POLLOCK:  Yes.

3              THE COURT:  All right.  So at this time, I'm

4    going to direct that that -- well, I have it in the court

5    file, so I don't know how -- I'm going to direct that

6    that addendum be incorporated and made a part of the PSR

7    at, revised PSR at this time.  Any objection?

8              MS. PEIRSON:  No, Your Honor.

9              MS. POLLOCK:  No, Your Honor.  My understanding

10   is that that document has not yet been filed, but it is

11   something that both of us have reviewed in consult with

12   Ms. Appenzeller; and we agree that all those are correct.

13             THE COURT:  All right.  I'm, I'm just -- yeah.

14   I was under the presumption that that had been

15   incorporated in the revised PSR, so I'll make it

16   official.  It now is.  That's now part of the revised

17   PSR, and we'll make sure that gets in the court file.

18             Mrs. Peirson, I'm sorry to say I've lost track.

19   I knew you were saying I've read the commentary, fall

20   under the guideline range; and then you interrupted

21   and said -- you interrupted yourself and said something.

22   I've, I've lost track of where you were.  I don't know if

23   you -- I don't know if you were winding down or warming

24   up, so I --

25             MS. PEIRSON:  I was winding down, Your Honor.

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   My recommendation is 210 months.  I'm not asking for a

2   fine in this case.

3           I am asking for a lengthy period of supervised

4   release because this behavior went on for quite a bit of

5   time, and I may not have said that in my commentary.  So

6   I am asking for 20 years of supervised release, following

7   the imprisonment time; no fine; and the $400 mandatory

8   special assessment.  None of the victims have sought

9   restitution in this case.

10          THE COURT:  All right.  To you, Mrs. Pollock.

11          MS. POLLOCK:  Thank you, Your Honor.

12          As Ms. Peirson stated, the guidelines range in

13  this case is 210 months on the low end.  We appreciate

14  that recommendation.

15          I am going to ask the Court to impose the

16  mandatory minimum, which is significant in this case.

17  It's 180 months, which, for a man of Mr. Auteberry's age,

18  is, is very long.

19          Additionally, there are factors about him that

20  distinguish him from other offenders charged with similar

21  conduct.  You can see from his presentence report that he

22  is a family oriented person.  He was struggling pretty

23  mightily with drug issues and mental and emotional health

24  issues, which is why he retired from the University of

25  Illinois where he had a lengthy period of consistent

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   employment.

2           He worked for the Facilities and Services

3   Division for a very long time and only retired in 2013

4   after he was unable to continue working due to his mental

5   and emotional health issues and also his seizure

6   disorder.  So when he retired from the university is when

7   he began spending more time on his computer, and that's

8   when these offenses occurred.

9           He has a very supportive family.  His ex-wife,

10  Robin, is here in the courtroom today.  She's the mother

11  of three of his children.  He also has several

12  grandchildren.  And for somebody of his age, obviously,

13  the main concern is that he'd like to get out at some

14  point while he's still alive so that he can see those

15  grandchildren and participate in their lives to a certain

16  extent.

17          In addition, Ms. Peirson did not make the

18  motion for a cooperation departure, but it wasn't for a

19  lack of effort on Mr. Auteberry's part.  He did proffer

20  and, over the course of this case, has written me at

21  least 20 times with additional information.  What's

22  unfortunate is that none of the information he was able

23  to provide resulted in any new charges or in any

24  significant assistance to authorities with whom he was

25  cooperating.  So even though the motion was not made with

1   any significant value, it wasn't for a lack of effort on

2   Mr. Auteberry's part.  He did everything he could to try

3   to get himself a lower sentence and simply was

4   unsuccessful, and it wasn't because he didn't try.

5          Like I said, you know, the guidelines are 210

6   to 262.  A departure of 30 months off of that down to a

7   mandatory minimum of 15 is, is not all that significant,

8   given his stellar employment history and the mental and

9   emotional health issues and physical issues that led him

10  to retire from his job and become involved in this type

11  of behavior.

12         So we would request that the Court impose a

13  sentence of 180 months on each count.  We do not dispute

14  the term of supervised release.  He'll be a registered

15  sex offender anyway for the balance of his life.  And if

16  he needs treatment to stop him from engaging in these

17  activities again, then that's what he needs.

18         And as Ms. Peirson stated, we have no further

19  objections.  We resolved the vagueness issues that United

20  States v. Kappes brought up.  Most of those conditions

21  are just fine with Mr. Auteberry, so long as he's not

22  expected to do something he doesn't -- he's not on notice

23  for.  And he is.

24         So, along with the period of supervised

25  release, also, of course, no fine and no restitution.

1          And that would be our argument.  Thank you.

2          THE COURT:  Thank you, Mrs. Pollock.

3          MS. PEIRSON:  Your Honor?

4          THE COURT:  Yes, ma'am.

5          MS. PEIRSON:  I apologize to interrupt.  I know

6     Mr. Auteberry has a turn.

7          But I just wanted to point out to the Court

8     paragraph 36 in the PSR addressing his employment

9     history.  It wasn't quite as stellar, I think, as maybe

10    Ms. Pollock had hoped it would be.

11         There was an incident of pornography and now,

12    under the definition of, federal definition of

13    pornography, would have been child pornography had we

14    known about it back in 2006.

15         THE COURT:  I thought there was more than one

16    episode.  Did I misread that?  I thought there were two

17    episodes.

18         MS. PEIRSON:  There was.  Your Honor is

19    correct.  There's two episodes.

20         THE COURT:  Yeah.  I actually read the PSRs

21    before I come in here.

22         MS. PEIRSON:  I know you do, Your Honor, but I

23    know you also have a lot of other cases.

24         MS. POLLOCK:  And in response to that, I would

25    just say the University of Illinois took no adverse

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1  employment action with regards to him on that matter, so

2  that's something for the Court to consider.

3            THE COURT:  I was aware of that.

4            All right.  Mr. Auteberry, you have the right

5  to allocution.  That is a fancy way of saying:  You have

6  the right to come up here before me and say whatever you

7  wish to say to me before I impose sentence.

8            If you do wish to do that, Mrs. Pollock will

9  come up and stand beside you.  You don't have to do so.

10  If you don't want to say anything, that's fine, too.  I

11  won't hold it against you.  It's totally your choice.

12            DEFENDANT AUTEBERRY:  I'd just like to say --

13            THE COURT:  If you do, come on up to the podium

14  so I can hear you better.

15            DEFENDANT AUTEBERRY:  Okay.

16            I'd just like to apologize if I hurt anybody,

17  and I'd like to apologize to the United States of

18  America; and I'd like to do my time and get on with my

19  life and take care of my people.

20            THE COURT:  All right.

21            DEFENDANT AUTEBERRY:  That's about all I can

22  say.

23            THE COURT:  Okay.  Thank you.

24            DEFENDANT AUTEBERRY:  Thank you.

25            THE COURT:  All right.  For the record, I am

1   taking the sentencing guidelines into account on an

2   advisory basis.  I am also applying the factors in, set

3   forth in Section 3553(a).  I understand the sentence I am

4   about to impose is sufficient and not greater than

5   necessary to comply with both the purpose of the

6   sentencing guidelines and the Section 3553(a) factors.

7           Mr. Auteberry, you are sort of -- your PSR

8   caused me a lot of issues.

9           Mrs. Pollock, if I understand her main

10  arguments -- and please correct me if I overlook any of

11  them -- she actually hit upon everything that I was

12  surprised by when I read your presentence report.

13          You are a family man with children of your own,

14  even grandchildren now.

15          You worked for the University of Illinois for a

16  considerable period of time.  U of I jobs -- for those of

17  us that live around the Champaign-Urbana area, all of us

18  know that jobs with the University of Illinois are --

19  they're good jobs.

20          Everything appeared to look to me as though you

21  had a very stable, normal life going on.

22          And then suddenly things just got derailed.

23  And rather than doing what a lot of us do when things

24  turn bad, you began to engage in some criminal conduct.

25  And, frankly, although Mrs. Peirson highlighted your

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   trouble with U of I in terms of your employment, I'd

2   already locked on to that paragraph because, knowing

3   typically how U of I behaves, I was surprised that you

4   were able to keep your job after 2006.  I was surprised

5   that you were not fired at that time.  But you weren't.

6   They, they let you stick around.

7         You don't have any other criminal history.  You

8   don't have any other indications to me that you are a

9   person who's violent, a person who has serious drug

10  addictions, anything like that.

11        You just appear to be a person who entered a

12  really bad period of their life due to some circumstances

13  beyond their control and, unfortunately, turned to this

14  type of child enticement behavior, exploitation behavior,

15  which got you here.  I mean, if I was going to summarize

16  it, that's why your presentence report -- I kept reading

17  it, waiting to hear about how you became addicted to

18  methamphetamine, or you, you became an alcoholic and then

19  started on that path, and that led -- none of that was in

20  here.

21        So if I had to address each of the 3553(a)

22  factors as though they were a laundry list, which I'm not

23  going to do -- those are things I'm supposed to consider

24  when I sentence you -- I would say, in general, your,

25  your character was good.  You, your -- your history is

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   good.

2           The difficulty is when I get to the other

3   factors I'm -- I need to impose.  The seriousness of the

4   offense.  This was bad because, under your Tony Martin

5   persona, you were really exploiting and enticing minors.

6   That's not good.  We need to, we need the message to go

7   out to stop that, and I have to take that into account

8   when I impose the appropriate sentence.

9           I have to provide just punishment for it.  This

10  didn't happen just once or twice in an isolated incident.

11  You did it repeatedly.

12          I have to take into account -- well, a variety

13  of other factors.  The need to protect the public from

14  further crimes that you might commit.  I think no matter

15  whether I agree with Mrs. Pollock and impose a 15-year

16  sentence or agree with Mrs. Peirson and go to 210, that's

17  only a two and a half year difference in terms of the

18  sentence, but I don't believe after this you're going to

19  be a danger to society.  I don't need to protect you from

20  further crimes.  I don't think you're going to commit any

21  further crimes.

22          I also have to take into account -- or I'm

23  going to take into account your age when I impose the

24  sentence.

25          Finally, I have to take into account the other

1    factors as set forth in 3553(a), which I'm not going to

2    recite as though they're some incantation.  I know them.

3           But I guess the bottom line for me -- I'll say

4    it for, I think, the fourth or fifth time -- your

5    presentence report really caused me -- it surprised me.

6    It caused me some difficulty.  I wish you had not gone

7    the way you went when things got bad, because I think --

8    well, I'll just leave it at that.

9           All right.  So now I come to what sentence to

10   impose.  It would not be -- for one thing, when I first

11   saw the indictment, my normal instinct was, guilty plea

12   or not, this many young ladies involved, I'm going to 262

13   or higher.

14          I'm not going to do that.  Because now that

15   I've read the presentence report, I changed my mind.  I

16   changed my mind before I came in here.  I heard what Mrs.

17   Pollock said.  I heard what Mrs. Peirson said.

18          I believe a sentence of 210 months is the

19   appropriate sentence.  It's within the guidelines.  I

20   think the guidelines in this case have it just dead-on

21   accurate.

22          In terms of the period of supervised release,

23   which is a hot topic right now at the Court of Appeals,

24   based upon the age of the defendant, I'm going to have a

25   hard time justifying a 20-year period of supervised

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1  release because, if I add that on to when you're likely

2  to get out with good time, we're going to be supervising

3  you in your 70s and 80s.  And I think -- I am directed by

4  Kappes to -- help me out, Mrs. Peirson or Ms. Appen--

5  narrowly tailor not only the conditions, but also the

6  length of time.  So I'm, I'm -- and as part of that, I'm

7  taking into account your age and the age you'll be at

8  when you are released.

9            So because of that, in my exercise of

10  discretion -- so the record can be clear, I'm not just

11  simply following along with what the parties and

12  Probation are saying; I'm exercising my discretion, and

13  I'm trying to narrowly tailor the period of supervised

14  release.  I believe a ten-year period of supervised

15  release is sufficient based upon your age.

16            We will discuss the supervised release terms at

17  this time.  And Mrs. Pollock, I understand that, because

18  Mrs. Appenzeller has a slight case of laryngitis, you

19  will be assisting me in making the record.

20            MS. POLLOCK:  Sure, I will.

21            THE COURT:  So let's just go through these 16

22  conditions.

23            The first condition is that the defendant shall

24  knowingly leave the jud-- excuse me, shall not knowingly

25  leave the judicial district without the permission of the

1   Court or probation officer.

2           Why did you agree to that, or why do you

3   believe that's appropriate, Mrs. Pollock?

4           MS. POLLOCK:  In accordance with United States

5   v. Thompson and United States v. Kappes, this is an

6   administrative requirement and is a necessary incident of

7   supervision.

8           THE COURT:  Number 2:  The defendant shall

9   report to the probation officer in a manner and frequency

10  directed by the Court or probation officer.

11          MS. POLLOCK:  This is also an administrative

12  requirement and necessary to supervision after U.S. v.

13  Thompson.

14          THE COURT:  Number 3:  The defendant shall not

15  knowingly answer falsely the probation officer's

16  questions, and shall follow the probation officer's

17  instructions as they relate to the defendant's conditions

18  of supervision.

19          MS. POLLOCK:  This is also an administrative

20  requirement and a necessary incident of supervision under

21  Thompson and Kappes; and, additionally, it states the

22  defendant shall not knowingly answer falsely,

23  incorporating the defendant's Fifth Amendment right to

24  refuse to answer a question should he feel that it would

25  violate his right against self-incrimination.

1      THE COURT:  The defendant -- number 4:  The

2  defendant shall notify the probation officer of any

3  change in residence, employer, or workplace within

4  72 hours.

5      MS. POLLOCK:  Under statute, the probation

6  officer is required to keep informed of the conduct and

7  condition of a person under supervision.  The officer

8  must be able to conduct visits with the person on

9  supervision in their home and also must be aware of any

10  address changes and current whereabouts.  This condition

11  is appropriate according to United States v. Kappes.

12      THE COURT:  The defendant shall not knowingly

13  be present -- this is number 5 -- be present at places

14  where controlled substances are illegally sold, used,

15  distributed, or administered.

16      MS. POLLOCK:  The defendant in this case has

17  used drugs and alcohol in the past.  There was a period

18  of time, although it was a while ago, where he was

19  drinking 20 to 30 beers per day, in addition to using

20  drugs on those same dates.  The defendant needs to spend

21  time with people at places where drugs are not used or

22  sold, and where he is not enticed to retreat into such

23  addictive behaviors.  And it also requires the scienter

24  requirement of "knowingly," so he will not be punished

25  for unknowingly visiting those places.

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1          THE COURT:  Condition number 6:  The defendant

2     shall not knowingly meet, communicate, or otherwise

3     interact with any person engaged in, or planning to

4     engage in, criminal activity, unless granted permission

5     to do so by the probation officer.

6          MS. POLLOCK:  If the defendant is to be

7     successful on supervised release, he should not have

8     contact with anyone engaged in criminal activity.  It

9     will discourage him from participating if he is to stay

10    away from those individuals.

11         THE COURT:  Number 7:  The defendant shall

12    permit a probation officer to visit the defendant at home

13    or elsewhere between the hours of 6:00 a.m. and

14    11:00 p.m., unless investigating a violation or in case

15    of an emergency.  The defendant shall permit confiscation

16    of any contraband observed in plain view by the probation

17    officer.

18         MS. POLLOCK:  Pursuant to statute, the U.S.

19    probation officer is required to keep informed of the

20    conduct and condition of a person under supervision.  The

21    officer must be able to conduct visits at home or

22    elsewhere to meet those statutory requirements.  And in

23    order to protect the public, if the probation officer

24    sees material/contraband in plain view, they are entitled

25    to confiscate it to protect the public.

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

```
 1          THE COURT:  Condition number 8:  The defendant

 2   shall notify the probation officer within 72 hours of

 3   being arrested or questioned by a law enforcement

 4   officer.

 5          MS. POLLOCK:  Pursuant to statute, the United

 6   States probation officer is required to keep informed of

 7   the conduct and condition of the person under

 8   supervision.  In order to protect the public from future

 9   crimes, the probation officer must be aware of any

10   contact that the defendant has with law enforcement to

11   determine whether or not he is involved in criminal

12   activity.

13          THE COURT:  Number 9:  As directed by the

14   probation officer, the defendant shall participate in a

15   psychological and behavioral testing, evaluation, and

16   assessment program for the treatment and monitoring of

17   sex offenders in a sex offender group and/or individual

18   counseling program.  The defendant shall comply with all

19   of the requirements and restrictions on, of such

20   programs.  The defendant shall submit to physiological

21   testing, including polygraph and -- oh, gees, I hate this

22   word.

23          MS. POLLOCK:  Plethysmograph.

24          THE COURT:  Plethy-- yeah.  You want me to

25   spell that?
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1        P-l-e-t-h-y-s-m-o-g-r-a-p-h testing -- I know

2   what it is; I just can't pronounce it -- as directed by

3   the treatment provider.  The defendant shall pay for such

4   services, if financially able, as directed by the U.S.

5   Probation Office.

6        MS. POLLOCK:  The condition is recommended

7   because sex offender treatment will assist the defendant

8   in managing his sexual interest in minors in a fashion

9   that will avoid future crimes and reduce the risk to the

10  community.

11       THE COURT:  Number 10:  You shall knowingly

12  associate with, have verbal written -- excuse me.

13       You shall not knowingly associate with, have

14  verbal, written, telephonic, or electronic communication

15  with, or have physical contact with any females under the

16  age of 18 except (1) in the presence of an adult who is

17  aware of the nature of the defendant's background and

18  current offense and who has been approved by the U.S.

19  Probation Office; (2) in the course of normal business;

20  or (3) in other cases of unintentional or incidental

21  contact.

22       MS. POLLOCK:  This condition is recommended

23  because the defendant has engaged in behavior with minor

24  victims where he enticed them to participate in sexual

25  conduct.

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1        THE COURT:  Number 11:  The defendant shall not

2   view, purchase, or possess (1) any materials including

3   depictions of minors under the age of 18 engaged in

4   sexually explicit conduct as defined in -- defined in

5   statute, or (2) any materials depicting sexually explicit

6   conduct involving adults, including depictions of actual

7   or simulated sexual intercourse, including

8   genital-genital, oral-genital, anal-genital or oral-anal,

9   whether between persons of the same or opposite sex;

10  bestiality; masturbation; sadistic or masochistic abuse;

11  or other depictions of explicit adult sexual conduct.

12  The defendant is prohibited from patronizing anyplace

13  where such material or entertainment is available.

14        MS. POLLOCK:  The condition is recommended

15  because avoiding these kinds of material assists the

16  defendant in successfully participating in sex offender

17  treatment.

18        THE COURT:  Condition number 12:  You shall

19  participate with the U.S. Probation Office's Computer and

20  Internet Monitoring Program during your term of

21  supervision.  The monitoring program will start as soon

22  as possible after your supervision term begins.  You

23  shall sign the rules of the Computer Internet and

24  Monitoring Program and comply with the conditions of this

25  program.

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

```
 1              During this time, you shall install filtering
 2    software on any computer you possess or use which will
 3    monitor access to websites that depict sexually explicit
 4    conduct as defined by statute.
 5              You shall allow the U.S. Probation Office
 6    unannounced access to any computer you possess or use to
 7    verify that the filtering software is functional.  You
 8    shall pay for the cost of the filtering software, if
 9    financially able, as directed by the U.S. Probation
10    Office.
11              MS. POLLOCK:  In the present case, the
12    defendant sought sexual material from minor victims on
13    Facebook, so the condition is recommended because
14    participation will assist him in avoiding such material
15    and also will help him successfully participate in sex
16    offender treatment.
17              THE COURT:  Condition Number 13:  If there is
18    reasonable suspicion to believe that the defendant is in
19    violation of a condition of supervised release related to
20    the receipt, transmission, or possession of any material
21    that depicts sexually explicit conduct, or any violation
22    of the Computer and Internet Monitoring Program, or any
23    violation of a sex offender treatment program, he will
24    submit to the search of his person, automobile, and
25    property under his control by the U.S. Probation Office.
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1              Further, he shall also allow the U.S. Probation

2    Office to conduct periodic unannounced examinations

3    between the hours of 6:00 a.m. and 11:00 p.m., unless

4    investigating a violation or in case of an emergency, of

5    his computer equipment, Internet cable devices, similar

6    electronic devices, related computer peripherals, which

7    may include retrieval and copy of all data from your

8    devices -- the defendant's devices -- to assure

9    compliance with this condition and/or removal of such

10   equipment for the purpose of conducting a more thorough

11   inspection.

12              MS. POLLOCK:  This condition is necessary to

13   ensure compliance with other restrictions regarding

14   seeking or possessing sexual materials and having contact

15   with children.

16              THE COURT:  14:  You shall not knowingly use

17   the Internet or visit any website, including chat rooms

18   or bulletin boards, to view materials depicting sexually

19   explicit conduct as defined in the applicable statute.

20              MS. POLLOCK:  The condition is recommended

21   because avoiding these types of material will help the

22   defendant successfully participate in sex offender

23   treatment.

24              THE COURT:  Condition 15:  You shall

25   participate in psychiatric services and/or a program of

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   mental health counseling/treatment, as directed by the

2   U.S. Probation Office, and shall take any and all

3   prescribed medications as directed by the treatment

4   providers.  You shall pay for these services, if

5   financially able, as directed by the U.S. Probation

6   Office.

7           MS. POLLOCK:  The defendant in this case has a

8   mental health history, including diagnoses of bipolar

9   disorder and PTSD.  He has received treatment in the

10  past.  In order to ensure that he can continue to receive

11  treatment, this condition is necessary for the Probation

12  Office to provide him with such.

13          THE COURT:  Condition 16, you shall register

14  with the state sex offender registration agency in any

15  state where you reside, are employed, carry on a

16  vocation, or are a student, as directed by the Probation

17  Office.

18          MS. POLLOCK:  This condition is necessary so he

19  can be adequately supervised and so that others in the

20  community are aware of the risk that he poses, and it is

21  also required by both federal and state statute.

22          THE COURT:  All right.  Thank you for your

23  assistance, Ms. Pollock.

24          For the record, I am imposing all those

25  conditions of supervised release.  So the record is

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   clear, the reason I am doing so is, are the reasons

2   stated by Ms. Pollock.  I adopt everything she said as

3   though I had spoken it myself as part of the defendant's

4   sentence.

5              Do you believe that's sufficient, Mrs. Peirson?

6              MS. PEIRSON:  Your Honor, I just -- the only

7   condition that I'm concerned about are the conditions

8   that discuss adult pornography.

9              As the Court knows, in <u>Kappes</u> they indicated

10  that there needs to be a compelling reason; and I think

11  that the reason stated by Ms. Appenzeller -- or suggested

12  to the Court by Ms. Appenzeller -- is compelling, but I'd

13  also ask the Court if the Court would -- to make a

14  finding based on the argument that I made in my

15  commentary that, particularly with the facts of this case

16  where the defendant used adult pornography to lower the

17  inhibitions of minors involved and, and particularly used

18  them as an enticement and coercion tool, that this is

19  compelling, with the facts of this case.  And that type

20  of technique of grooming minors has been recognized by

21  the Seventh Circuit repeatedly as a technique that's used

22  by individuals who are seeking to sexually exploit

23  minors.

24             THE COURT:  I would -- you don't object to that

25  finding, do you, Ms. Pollock?

```
 1          MS. POLLOCK:  No, I don't.

 2          THE COURT:  All right.  With no objection from

 3  the defense, I, I will adopt what Mrs. Peirson just said.

 4  I agree.  I guess I overlooked that.  After reading the

 5  presentence report -- and I touched upon the defendant's

 6  character prior to his complete meltdown -- and then I

 7  indicated that he had begun to lure and groom different

 8  young minor women under the Tony Martin name.  It's clear

 9  to me from the presentence report that what Mrs. Peirson

10  said is correct, and that would justify that condition.

11          All right.  Anything else I need to touch upon,

12  Mrs. Peirson?  Or have I covered it all?

13          MS. PEIRSON:  No, Your Honor.  Thank you.

14          THE COURT:  All right.  So let me get to the --

15              (Brief pause in proceedings.)

16          THE COURT:  Excuse me while I find my

17  appropriate sheets here.

18          All right.  So by way of sentence, the

19  defendant, David E. Auteberry -- pursuant to the

20  Sentencing Reform Act of 1984, the defendant is hereby

21  committed to the custody of the Bureau of Prisons for a

22  period of 210 months.  Said sentence shall consist of

23  210 months on each of Counts 1 to 4 to run concurrently.

24          The Court finds the defendant does not have the

25  ability to pay a fine.  No fine is imposed.
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1          Following your release from custody, you shall

2   serve a ten-year term of supervised release.  Said

3   sentence shall consist of ten years on each counts -- on

4   each of Counts 1 through 4 to run concurrently.

5          Within 72 hours of your release from custody

6   from the Bureau of Prisons, you shall report in person to

7   the Probation Office in the district to which you are

8   released.

9          While on supervised release, you shall not

10  commit another federal, state, or local crime.

11         You shall not possess a controlled substance.

12         You shall submit to one drug test within

13  15 days of release from imprisonment, two drug tests

14  thereafter, as directed by the probation officer.

15         Pursuant to statute, you shall cooperate in the

16  collection of DNA, as directed by the probation officer

17  or the Bureau of Prisons.

18         You shall not possess a firearm, ammunition,

19  destructive device, or any other dangerous weapon.

20         You shall comply with the following conditions

21  of supervised release that are within the judgment and

22  com-- the J and C, the judgment and commitment order,

23  which we've read into the record with the explanation

24  provided orally by Ms. Pollock, and I incorporate what

25  she said as my reasons and findings.  That would be --

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1    that would cover all of the conditions of supervised

2    release, just so the record is clear.

3              A special assessment of $400 is imposed and

4    payable immediately.

5              In this case, Mrs. Peirson, there was an order

6    of -- preliminary order of forfeiture?  I didn't look at

7    the docket.

8              MS. PEIRSON:  Um --

9              THE COURT:  Has there been?  No.

10             MS. PEIRSON:  Your Honor, I'd have to check

11   with our forfeiture folks to double-check.  But we -- if

12   we didn't file it already, we'll file it shortly after

13   the hearing, on Monday.

14             THE COURT:  There is one.  I've already ruled

15   on it.  It was filed on September 19th of last year, and

16   I entered an order on October 6th of last year.  So

17   I'll -- all proceeds are forfeited to the United States

18   that are derived from the conduct contained within

19   Counts 1 through 4, and any property thereof, including

20   any items that were referenced in the preliminary order

21   of forfeiture or the final order of forfeiture.

22             The Court further recommends that the defendant

23   serve his sentence in a facility as close to his family

24   as possible.

25             MS. POLLOCK:  Can I interrupt that quickly,

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

```
1    Your Honor?
2            He requests a specific recommendation of
3    Greenville, if you can throw that in the order.  I know
4    BOP doesn't listen to it, but that's what he'd like.
5            THE COURT:  All right.  Strike my earlier
6    statement.  It is recommended that the defendant serve
7    his sentence in Greenville -- Greenville FCI, which is in
8    Greenville, Illinois.
9            It is further recommended that he serve his
10   sentence in a facility that will allow him to participate
11   in the sex offender treatment program.  I'm not sure
12   that's at Greenville.
13           MS. POLLOCK:  I don't think it is.  I don't
14   think there -- there's a -- Marion is the only facility
15   in Illinois that has a sex offender management program.
16   It's a USP.
17           THE COURT:  Well, --
18           MS. POLLOCK:  This is Mr. Auteberry's request,
19   so if you want to state "the closest place to home that
20   has a sex offender management program."
21           THE COURT:  Yeah.  I don't think Greenville's
22   going to work, so actually strike out what I said before.
23   I'm not going to recommend that.
24           I'm going to recommend that he serve his
25   sentence in a facility as close to his family as
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1    possible, and the facility have the ability to allow him

2    to participate in the sex offender treatment program.

3              That might be Terre Haute, but I'm not sure.

4    I'd rather have you be in Terre Haute than be in Marion,

5    but I have no control.

6              So -- all right.  Does either party want any

7    further explanation of my, the Court's reasons for

8    imposing sentence?  Mrs. Peirson?

9              MS. PEIRSON:  No, Your Honor.

10             THE COURT:  Mrs. Pollock?

11             MS. POLLOCK:  No, Your Honor.

12             THE COURT:  Is there anything unclear or

13   confusing, or have I made any mistakes of which you are

14   aware that I need to correct, Mrs. Peirson?

15             MS. PEIRSON:  No, Your Honor.

16             THE COURT:  Mrs. Pollock?

17             MS. POLLOCK:  No, Your Honor.

18             THE COURT:  Mrs. Pollock, do you believe I have

19   addressed all of your -- all of your arguments that you

20   raise in, on behalf of your sentencing recommendations?

21             MS. POLLOCK:  Yes, I do.

22             THE COURT:  All right.  I think there was an

23   appeal waiver.  I've lost the plea agreement.

24             MS. POLLOCK:  That's correct, Your Honor.

25   There was.

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

```
1              THE COURT:  There was an appeal waiver?  All
2    right.  Thank you.
3              Mr. Auteberry, under -- you have entered into
4    an appeal waiver within your plea agreement.  Under some
5    circumstances, nevertheless, the defendant sometimes has
6    the right to appeal the sentence.
7              You have entered into a plea agreement which
8    waives some or all of your rights to appeal the sentence
9    I just imposed.  Such waivers are generally enforceable;
10   but if you believe the waiver itself is not valid, you
11   can present that theory to the Appellate Court.
12             Do you understand what I just said?
13             DEFENDANT AUTEBERRY:  Yeah.
14             THE COURT:  Bas-- okay.  You look like you're
15   confused.  Basically, what I'm saying is:  You've waived
16   your right to appeal your guilty plea and your sentence.
17   That was part of your plea agreement.  Do you understand
18   that?
19             DEFENDANT AUTEBERRY:  Yeah.
20             THE COURT:  All right.  If for some reason you
21   believe that the very fact that you listened to your
22   attorney and you signed that plea agreement -- this is
23   just an example -- that that was wrong, that was an
24   error, you could try to advance that as a theory to the
25   Court of Appeals.
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

```
 1              DEFENDANT AUTEBERRY:  Okay.

 2              THE COURT:  All right?

 3              DEFENDANT AUTEBERRY:  [Nodding head up and

 4    down.]

 5              THE COURT:  You could advance other arguments

 6    as well.  I'm just giving you an example.  You

 7    understand?

 8              DEFENDANT AUTEBERRY:  Yeah.

 9              THE COURT:  Okay?  But those appeal waivers --

10    what I'm saying is:  Those appeal waivers, generally they

11    stick.  They're valid.  Okay?  Do you understand what I'm

12    saying now?

13              DEFENDANT AUTEBERRY:  Yeah.  I think so.

14              THE COURT:  All right.  You appear to be

15    understanding now.  What I've said before -- the confused

16    look is off your face.

17              All right.  Any Notice of Appeal must be filed

18    within 14 days of the entry of judgment, or within

19    14 days of the filing of a Notice of Appeal by the

20    government.

21              If you request it, the Clerk of the Court will

22    prepare and file a Notice of Appeal on your behalf.  You

23    can also direct your attorney to file a Notice of Appeal,

24    or you can file one yourself.

25              If you cannot afford to pay the cost of an
```

USA v. DAVID E. AUTEBERRY, Case No. 14-20027

1   appeal, or to pay for an attorney to represent you on

2   appeal, you have the right to apply to have the Court

3   waive the filing fee and to ask for a Court-appointed

4   attorney on appeal.

5           Do you understand the rights I just explained

6   to you?

7           DEFENDANT AUTEBERRY:  Yes.

8           THE COURT:  Anything else for the record,

9   Mrs. Peirson?

10          MS. PEIRSON:  No, Your Honor.  Thank you.

11          THE COURT:  Mrs. Pollock?

12          MS. POLLOCK:  No, thank you.

13          THE COURT:  All right.  The defendant is

14  remanded to the custody of the United States Marshal

15  Service.

16          We'll be in recess.

17              (Hearing concluded, 3:10 p.m.)

18                  * * * * * * * * * *

19              REPORTER'S CERTIFICATE

20      I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify
    that the foregoing is a correct transcript from the
21  record of proceedings in the above-entitled matter.

22      Dated this 19th day of May, 2015.

23

                    s/Lisa Knight Cosimini
24              _____
                Lisa Knight Cosimini, RMR-CRR
                Illinois License # 084-002998
25